Our fifth case for argument this morning is Nehan v. Tootsie Roll Industries. May it please the Court? Judith Bender. Patricia Bender on behalf of the Appellant Burgess Nehan. It is the Appellant's contention that he was terminated by Tootsie Roll on August 18, 2010, based upon his national origins, race, and specifically in retaliation for having complained about two of Tootsie Roll's employees, specifically plants manager Edward Weber and supervisor Jen Gross. The record shows that prior to June 4, 2010, that Nehan had filed complaints with HR and had filed grievances against Edward Weber and Jen Gross, specifically in regards to them denying him the right to work overtime. Specifically, on December 2009, a grievance was filed alleging desperate treatment by Jen Gross in dividing overtime. On March 26, 2010, a grievance was filed alleging the violation of the Anti-Discrimination Clause in the Collective Bargaining Agreement and that Ed Weber was purposely harassing plaintiff and only him to not work overtime. Further, on May 21, 2010, a grievance was filed alleging the violation of the Collective Bargaining Agreement and that Edward Weber had suspended plaintiff without just cause on the ground that supposedly the plaintiff had refused to pick up a heavy propane tank, which the plaintiff testified he did not pick up because he felt it would endanger his safety. The plaintiff returned to work from the five-day suspension that was entered by Edward Weber on June 4, 2010. Now, I believe what is important for the Court to understand in regards to June 4 is that at that time, it was an undisputed fact that part of Nehan's job description was that his job involved the use of a forklift. Further, another point is that at this time, Mr. Weber was aware of Nehan's back condition. Nehan had been working, performing his job. His title was High Load Operator. He had been performing his job without any problems because his job allowed him to use a forklift. He was able to use a forklift up until June 4, 2010. And it seems that, and you spent some time on that in your brief, and if this was an ADA claim, there would be some evidence in the record. What I'm looking for is what evidence, what's your best evidence that this discrimination was based on race or national origin? The best evidence is that on June 4, 2010, that Edward Weber and John Gross approached the plaintiff as he was working along with another employee. They both were working in the picking area, doing the same job, and both using a forklift. The employee was named John Micah. His race was Caucasian American. John Gross and Edward Weber took the forklift from Nehan, did not take the forklift from John Micah. Another point is that at the same time John Gross and Edward Weber told Nehan that he wanted the forklift that he was using, that Nehan was using, to give to another employee who was coming in later. That employee, too, was Caucasian American. So both John Micah and the second employee, Rick Cruz, were outside of the protected categories of race and also national origin. In this case, the plaintiff, Nehan, is African, having been born in the Ivory Coast, and his race was black. So that's the evidence I have in regards to national origin discrimination and race discrimination. Further, the plaintiff filed a complaint with EEOC alleging discrimination on those issues of race and national origin discrimination, and also in retaliation for him having complained of discrimination by Edward Weber and John Gross. What I believe is in dispute in this case, specifically, is the comment that was made by Edward Weber and John Gross when the forklift was taken from Nehan. And I believe the interpretation of that comment and the facts surrounding that comment were material facts, and they were of genuine dispute. However, the court resolved... What was the comment? The comment, specifically, the court recited the comment as being from Nehan's deposition testimony to be that Weber told him, you don't have to use a forklift. The court then stated that the plaintiff, in his affidavit filed in opposition to summary judgment, stated that Weber told him he cannot use a forklift. The court struck and disregarded the statement in the affidavit and in Nehan's statement of facts that he cannot use a forklift because the court stated that the statements were inconsistent. It is plaintiff's contention that it was error for the court to strike Nehan's affidavit statement because it was neither contradictory, it did not conflict, and it was not a sham with the deposition testimony. At most, there was a difference in phrasing, which Nehan explained was due to English being his second language. And it is the plaintiff's contention that a reasonable inference can be made that under either phrasing, the intent was the same. That was to put Nehan on notice that he would not be allowed to use a forklift. Under either version, how does one draw an inference of race, national origin, or retaliatory intent? In regards to retaliatory intent, the facts show that Mr. Weber was aware on June 4th that plaintiff had a back condition. Nehan had been allowed to use a forklift and Nehan had never had a problem, any objection with him using a forklift because that was part of his job. After Nehan complained about Mr. Weber in March, I believe, 2010, that's when Mr. Weber approached Nehan and told him to lift the heavy propane tank. Nehan, it's Nehan's position, he testified that he believed that was in retaliation for him having complained. Well, there's no question in my mind that Mr. Nehan sincerely believes he's been a victim of race, national origin, discrimination, and retaliation. What I'm looking for is some evidence other than his own beliefs that would support that inference or either of those inferences. Well, basically, Mr. Weber had made it known to Nehan, again, that he did not want him to use the forklift, but that came after Nehan had complained about race and national discrimination and allowing him to work overtime. So I believe that there was an inference that by Nehan having complained specifically that he was denied the right to work overtime and that he believed it was based upon his race and his national origin that Ed Weber and Gross had an end for Nehan. So these various actions specifically in taking the forklift from him on June 4th was a retaliation for that fact. So it may not be like specifically Ed Weber and Gross coming to him and saying, I'm going to take this forklift from you because you complained about us not giving you overtime, but I believe a reasonable inference can be drawn from the facts that that was Weber's and Gross's intent on June 4th. I'm going to take in the- Thank you, Counsel. Pardon me. Ms. Billouts. Good morning, Your Honors. May it please the Court. The crux of this case and the undisputed facts at issue that require Judge Tharp's decision to be affirmed are as follows. Plaintiff Nehan admitted to engaging in the misconduct that ultimately led to his discipline and his termination. That can be found in his own deposition testimony at the record, which is in the docket 46-2, page 273. He also admitted during his deposition that he was very familiar with Tootsie Roll's plant work rules and that insubordination would result in suspension and or termination of employment. That's also noted in his deposition at page 36 of the record. Mr. Nehan, at no point, either before the district court or in his appellate briefing, has pointed to a single individual with the same misconduct work record who was treated more favorably than him. Not a single individual outside of any of his protected categories. That, in and of itself, is fatal to his claims of discrimination on the basis of his discipline and his termination. Moreover, with respect to Mr. Nehan's alleged justification for refusing to work the overtime, which is ultimately the final insubordination that led to his termination, he offers the justification that he needed a forklift to do his job. What plaintiff cannot dispute is that Tootsie Roll had a doctor's note in October 2009 that said Mr. Nehan had zero medical restrictions. Tootsie Roll acknowledges that he had been out previously for other work-related injuries and that there may have been medical restrictions in place, but effective October 2009, through the end of his employment, there was zero medical documentation that was ever presented to Tootsie Roll that suggested that Mr. Nehan needed to use a forklift. Additionally, he cannot point to anybody else who was accommodated where he was not accommodated. In fact, some of the individuals he points to in his briefing he testifies were treated just the same as him. When he could not perform the essential functions of his job, the high-low operator, he was moved to another area of the plant to allow him to continue working, which is where he said other individuals were also transferred. Simply stated, the undisputed evidence shows that Mr. Nehan had a history of misconduct and behavior that he was properly disciplined for in accordance with Tootsie Roll's plant rules, and that there's not a single shred of evidence that anybody was treated more favorably than him. Regarding these alleged statements by Mr. Weber, who was the warehouse manager, he was not the plant manager, regarding these alleged statements by Mr. Weber, Judge Tharp was correct to strike that inconsistent contradictory statement from Mr. Nehan's affidavit. There's a big difference between being told you do not have to use your forklift versus you cannot, and here's why. The undisputed record evidence shows that the high-low operator has multiple job duties. They can be required to pick product, whereby they would be picking bags of candy and putting them into certain boxes. The pallets are on what's called a walkie, which is what's typically used to do this. A walkie is very different from a forklift. A walkie can't rise up multiple levels in a warehouse into the racking. The walkie stays fairly low, and this is all in the record. The forklifts are typically used for exactly what I just described, going high up into the racks and pulling out product and loading trucks, because a walkie isn't going to be very effective that way. Mr. Weber telling Mr. Nehan that he does not need to use a forklift every time he comes to work was in direct relation to what he was doing on June 4, 2010, and Mr. Nehan admits that in his deposition. In his deposition, what he said was Mr. Nehan told him because he was picking, you don't need to use a forklift every single time. That's consistent with Tootsie Roll's use of equipment in the job functions for high-low operators. Additionally, the other reason why Judge Tharp properly disregarded this statement in Mr. Nehan's affidavit is he didn't just say this once during his deposition. Multiple times in his deposition, he testified consistently that what Weber told him is you did not need to use the forklift. Moreover, Judge Tharp, even giving him an additional benefit of the doubt, looked at other documents in the case and pulled out his September 2010 charge of discrimination, which Mr. Nehan filed after he was terminated and in support of his allegations of discrimination. In that charge, he used almost identical language to what he testified to during his deposition. And finally, what Judge Tharp looked at in properly excluding it is Mr. Nehan's own admission that after June 4, 2010, he regularly used a forklift in the performance of his duties. There is not another single instance or shred of evidence that Mr. Nehan has identified after June 4, 2010, of him ever being requested to give up his forklift or being denied the use of a forklift. That record evidence, which is all undisputed, is what Judge Tharp based his decision on in not crediting the contradictory statement in the affidavit. And it was proper. At the end of the day, though, with respect to his claims, Mr. Nehan still, even with that affidavit, can't make out the prima facie elements of his case. He simply cannot do so. He cannot establish that he was legitimately meeting Tootsie Roll's expectations. He cannot establish that similarly situated individuals were treated more favorably. And he certainly cannot establish pretext for the reasons offered by Tootsie Roll for its legitimate actions in this matter. And for all those reasons, we ask that this court affirm the district court's decision granting Tootsie Roll's summary judgment on all matters. Thank you very much. The case is taken under advisement.